432 P.2d 152

Rollin L. FRIZZELL, Petitioner,

v.

INDUSTRIAL COMMISSION of Arizona,
and the Fluor Corporation
Ltd., Respondents,

John Ahearn, C. Lawrence Huerta and Frank
G. Murphy, as members of and constituting
the Industrial Commission of Arizona.

No. 1 CA–IC 128.

Court of Appeals of Arizona.

Oct. 4, 1967.

McGillicuddy, Johnson, Rich & Robbins, by Chris T. Johnson, Phoenix, for petitioner.

Robert K. Park, Chief Counsel, by Dee-Dee Samet, Phoenix, for respondent Industrial Commission.

DONOFRIO, Judge.

This is a writ of certiorari to review the lawfulness of a findings and award of The Industrial Commission of Arizona denying claimant's petition for readjustment or for the reopening of his claim. The petition was filed on August 7, 1965, alleging the grounds of new, additional or previously undiscovered disability.

Petitioner, while doing heavy plumbing work, was injured May 22, 1962, when employed by The Fluor Corporation Ltd. He was struck by a piece of falling steel and knocked from a ladder, injuring his neck, spine and low back. The liability for the incident was accepted by The Industrial Commission. On January 13, 1963, the Commission closed the case with a no disability finding. Petitions to readjust or reopen were thereafter filed in September 1963 and August 1965. It is from the denial of the petition to readjust or reopen filed in August 1965 finding no new, additional or previously undiscovered disability that this appeal is taken.

The question for our determination is whether the Commission's finding is reasonably supported by the evidence.

This case, like many others, has a voluminous record of activity and hearings. We believe it necessary to give only a brief summary of the matter before us. Petitioner sets forth that he was examined by two doctors in particular who stated that in all probability he suffers a disability as the result of his accidental injury. The Commission on the other hand had, over the years, appointed different medical consultation boards who have been unable to detect any objective symptoms of disability and have concluded from petitioner's history and from their examinations of him that he suffers no permanent disability as a result of the industrial accident. The boards were composed of specialists, orthopedists, and neurological surgeons. They

performed all of the usual medical tests on claimant, including myelogram, myogram and cerebral spinal fluid studies, as well as X rays. All of these were negative for any abnormalties of the spinal column. The thing that was detected which the consultants thought would explain petitioner's condition was arthritic spurring of the spine, which they felt was not related to the industrial accident.

▉ Since an award should be affirmed if reasonably supported by the evidence, Dunham v. Industrial Commission, 4 Ariz. App. 575, 422 P.2d 406 (1967), we deem it necessary to set out only the following testimony given by Dr. Edward McLoone which we find corroborated by other evidence:

"Q And your findings were that there were no permanent disabilities as a result of the Industrial accident, is that correct?

"A Yes.

"Q What did you base this conclusion on?

"A On his history, on his performance, and on the objective physical findings.

"Q Were there any objective physical findings that might indicate a disability resulting from the Industrial accident, or were his physical findings essentially normal?

"A There were minimal objective abnormal physical findings, but none that would indicate a disability. It was recorded that there was some general tightness about both hips. In addition to palpation he had some complaint of soreness in the region of his posterior superior iliac spine, that is the left low back. However, that finding would be both objective and subjective. But those two findings we didn't feel indicated any disability.

"Q If I give you as a fact that Mr. Frizzell, since the accident, finds that he has pain upon coughing if he doesn't control it in a certain way, and that in standing long periods of time he develops an ache or pain in the lower midback, and then he finds his back, as he calls it, 'goes out' at certain times during the year after he starts having his aches, and I think he estimated it as possibly six times a year, would this indicate to you that—when doing heavier work, I will add that—that is, any disability resulting from the injury —oh, may I add the fact that he says that prior to the injury he was able to do the regular heavy work of a plumber and steam fitter without having problems with his back?

"A No, that history wouldn't necessarily indicate to me that there was any disability as a result of the accident. That history, frankly, is rather common in many people who never had an accident, and particularly those people who are, not getting old, but they are not in the shape they were, say, at 20 that they are at 35 or 40."

Petitioner relies mostly on the evidence of Dr. W. P. Tucker, a general practitioner, to the effect that he is totally disabled and unable to do the work that he formerly did and that he suffers actual physical disability that "incapacitates him forty, fifty percent from doing anything". Petitioner also claims support from the evidence of Dr. John R. Green, a neurological surgeon, who found a general disability. Dr. Green, however, did not have an opinion as to whether the disability was permanent. He deferred to the orthopedists, stating it was primarily an orthopedic matter. At the hearing Dr. Green summarized his position by reiterating the following contents of a letter he had written to petitioner and his referring doctor:

"I was sufficiently impressed by your condition to feel that further orthopedic evaluation and the consideration of spinal fusion might be of help. It would seem that this opinion was not shared by

Dr. McLoone who has known about your condition during the past four years. I would feel that I should defer to Dr. McLoone's opinion. I would discuss this very frankly if I were you, with Dr. Tucker, and if Dr. Tucker feels something further should be done, he may wish to refer you to another orthopedic surgeon. I would feel that any further surgery, if it is indicated, should be performed by a bone and joint surgeon because there is no specific indication for neurosurgery alone."

It is to be noted that these two doctors relied considerably on petitioner's subjective complaints.

Where a case calls for expert testimony, this Court will not substitute its opinion for that of the Commission where the Commission has resolved a conflict in medical testimony. Smiles v. Industrial Commission, 2 Ariz.App. 167, 406 P.2d 885 (1965).

We find that petitioner has not sustained his burden on the petition and that the finding and award is reasonably supported by the evidence.

CAMERON, C. J., and STEVENS, J., concur.